**Rogelio REYES–SANCHEZ, Petitioner,**

**v.**

**John ASHCROFT, Attorney General of the United States, Thomas Ridge, United States Homeland Security Secretary; ASA Hutchinson, Undersecretary for Border Transportation Security; Michael Garcia, Assistant**

Secretary (designee) Bureau of Immigration and Customs Enforcement (BICE); Paula Corrigan, Interim BICE Regional Director; Edward McElroy, Interim BICE Director (formerly District Director of the United States Immigration and Naturalization Service); Demetrios Georgakopolous, Interim BICE Director, Defendants

No. M–54 (SHS).

United States District Court,
S.D. New York.

April 29, 2003.

Rene C. Redman, Hughes, Hubbard & Reed, LLP, New York City, for petitioner.

James B. Comey, United States Attorney, Southern District of New York, Megan L. Brackney, of counsel, New York City, for respondent.

## OPINION AND ORDER

STEIN, District Judge.

Rogelio Reyes–Sanchez, a citizen of the Dominican Republic, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging a final decision of the Board of Immigration Appeals ("BIA") denying his applications for withholding and deferral of removal pursuant to the Immigration and Nationality Act (the "INA") and the Convention Against Torture (the "CAT") and ordering his removal from the United States. On May 18, 2002, while this petition was pending, the Immigration and Naturalization Service [1] (the "INS") removed Reyes–Sanchez to the Dominican Republic, where he currently resides.

Petitioner challenges the BIA's decision on the grounds that: (1) the BIA improperly designated his conviction for attempted sale of cocaine as a "particularly serious crime," thereby barring him from eligibility for withholding of removal pursuant to the INA and the CAT; (2) the CAT's implementing regulations, promulgated by the Attorney General, are invalid as inconsistent with the plain language

**1.** Effective March 1, 2003, the enforcement functions of the INS were transferred to the Bureau of Immigration and Customs Enforce- ment ("BICE") as part of the recently-formed U.S. Department of Homeland Security. *See* http://www.dhs.gov.

and international understanding of the CAT, and that therefore, the BIA applied the improper legal standards in evaluating petitioner's claims; and (3) the BIA erroneously concluded that petitioner, who suffers from AIDS, failed to prove more likely than not that he would be tortured in the Dominican Republic on account of his medical condition. With respect to his third claim, petitioner specifically alleges that he is more likely than not to be tortured in the Dominican Republic because that government's HIV medication policy will deprive him of the life-sustaining medication he requires; doctors in the Dominican Republic, some of whom are state agents, are afraid of individuals with HIV and AIDS and do not provide them with appropriate medical care; and because there is a presumption in the Dominican Republic that any man with HIV or AIDS is a homosexual and that some doctors refuse to give homosexuals the same medical treatment as they give heterosexuals. (Pet. Brief at 40, 49–50).

For the reasons set forth below, the petition for a writ of habeas corpus is denied.

## I. BACKGROUND

Petitioner, a citizen of the Dominican Republic, was admitted to the United States as a visitor for pleasure on August 16, 1985 and became a lawful permanent resident on March 15, 1990. On January 29, 1991, he pled guilty to one count of attempted criminal sale of a controlled substance (cocaine) in the third degree, in violation of N.Y. Penal Law § 220.39(1). He was sentenced to five years of probation. On June 12, 1996, he was convicted of violating his probation and was sentenced to six months' imprisonment.

On April 27, 2000, the INS initiated removal proceedings against Reyes–Sanchez, and on January 16, 2001, served him with Additional Charges of Inadmissibility/Deportability alleging that he was subject to removal from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(B) (drug trafficking offense) based on his 1991 conviction for attempted criminal sale of a controlled substance in the third degree.

In November 2001, an Immigration Judge ("IJ") found petitioner removable from the United States pursuant to 8 U.S.C. § 1227(a)(2)(B)(i) (conviction for violating controlled substance law) and 8 U.S.C. § 1127(a)(2)(A)(iii) (conviction for aggravated felony). (IJ Decision, JA 116–133.)[2] After a rigorous analysis, which gave serious consideration to petitioner's conviction and criminal history, as well as the equities (including his long term residency in the United States, the presence of his child—a U.S. citizen—in the United States, and his good behavior while imprisoned), the IJ denied petitioner's application for a discretionary waiver pursuant to section 212(c) of the INA, 8 U.S.C. § 1182(c). (JA 123–27.) The IJ also denied petitioner's application for withholding of removal pursuant to the INA and the CAT after considering the circumstances of petitioner's conviction and finding that he had been convicted of a "particularly serious crime," rendering him ineligible for relief offered by the INA and the CAT pursuant to 8 U.S.C. § 1231(b)(3)(B). (JA 127–29.) The IJ explicitly declined to find that the failure of the Dominican Republic's government to subsidize medical treatment for all HIV and AIDS patients constituted "tor-

---

**2.** References to "JA __" are to pages in the Joint Appendix, which was filed with petition-er's January 6, 2003 brief to the U.S. Court of Appeals for the Second Circuit.

ture" within the meaning of the CAT. (JA 16.). However, the IJ granted petitioner's application for deferral of removal pursuant to Article 3 of the CAT, finding that petitioner "might be intentionally denied appropriate medical treatment because of his status as an HIV+ patient with full blown AIDS." (JA 17.) The IJ based his finding on petitioner's contention that some doctors in the Dominican Republic, some of whom are public officials, intentionally refuse treatment to patients with HIV and AIDS. (JA 16–17.)

The INS and Reyes–Sanchez cross-appealed the IJ's decision to the BIA. Petitioner contended that: (1) the IJ erred in denying his application for section 212(c) relief; (2) the IJ erred in determining that petitioner's conviction for attempted criminal sale of a controlled substance in the third degree is a "particularly serious crime"; and (3) petitioner should be granted withholding of removal pursuant to the INA and the CAT. The INS asserted that the IJ erred in granting petitioner's deferral of removal pursuant to the CAT because petitioner failed to prove more likely than not that he would be tortured if returned to the Dominican Republic.

On April 25, 2002 the BIA issued a decision dismissing petitioner's appeal and granting the INS's appeal, thereby denying petitioner's application for deferral of removal pursuant to the CAT and ordering petitioner removed from the United States. (JA 1–5.) The BIA found that the IJ did not abuse its discretion in denying petitioner's application for section 212(c) relief. (JA 3.) With respect to petitioner's claim that his 1991 conviction was not a "particularly serious crime," the BIA explained that it is bound by the decision of the U.S. Attorney General in *In re Y–L–, A–G–, and R–S–R–,* 23 I. & N. Dec. 270, 2002 WL 358818 (A.G. March 5, 2002), in which the Attorney General classified aggravated drug trafficking convictions as

"particularly serious crimes," except where "extraordinary and compelling" circumstances warrant a departure from that classification. *In re Y–L–,* 23 I. & N. Dec. at 274. (JA 3.) The BIA further found that petitioner had not demonstrated that his conviction fell within the exception for "extraordinary and compelling" circumstances, as set forth in *In re Y–L–.*

With respect to petitioner's application for deferral of removal pursuant to the CAT, the BIA found that the IJ erred in concluding that the refusal by some doctors in the Dominican Republic to provide some types of medical treatment to HIV patients constitutes the intentional infliction of physical and mental torture within the meaning of the CAT's implementing regulations. Like the IJ, the BIA also found no evidence that public officials in the Dominican Republic intentionally created and continue to maintain substandard medical conditions for persons with HIV or AIDS. To the contrary, the BIA found that "[t]he government of the Dominican Republic has made a significant effort to provide competent medical care for these patients despite its inability to cover the necessary costs.... In fact, the evidence shows that the government is currently attempting to manufacture generic versions of the necessary drugs for treatment in order to reduce medical costs for impoverished patients." (JA 4.)

Finally, the BIA concluded that "the evidence of record does not substantiate the Immigration Judge's finding that it is more likely than not that the respondent will be subjected to treatment rising to the level of torture with the acquiescence of a public and/or government official if returned to the Dominical Republic." (JA 4.) The BIA explained that although the evidence in the record suggested that HIV and AIDS patients in the Dominican Republic may receive substandard medical treatment from public and private hospi-

tals, these conditions do not constitute "torture" within the meaning of the CAT as implemented by 8 C.F.R. § 208.18(a). (JA 4.)

Accordingly, the BIA ordered petitioner removed from the United States and, as noted above, he was in fact subsequently removed to the Dominican Republic.

## II. *JURISDICTION*

■■■ This Court properly has jurisdiction to consider Reyes–Sanchez's petition, which is here pursuant to an order from the U.S. Court of Appeals for the Second Circuit dated February 18, 2003. In order for this Court to exercise jurisdiction over the habeas petition, a non-citizen who has been deported must (1) satisfy the "in custody" requirement of the federal habeas statute and (2) demonstrate that the petition is not moot as a result of his deportation. *See, e.g., Louise v. Costello,* 2002 WL 1446618, at *2 (S.D.N.Y. July 2, 2002); *So v. Reno,* 2003 WL 1193509, at *5 (E.D.N.Y. Jan.24, 2003)

On May 16, 2002, Reyes–Sanchez filed a petition for review of the BIA's decision in the Second Circuit. On May 18, 2002, while that petition was pending, the INS removed Reyes–Sanchez from the U.S. to the Dominican Republic.[3] On February 18, 2003, the Second Circuit determined that it did not have jurisdiction over the petition for review pursuant to 8 U.S.C. § 1252(a)(2)(C), which provides in relevant part that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in ... [8 U.S.C. § 1227(B) ]." The Second Circuit therefore transferred the petition for review to this Court pursuant to 28 U.S.C. § 1631, which instructs that:

> Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed or noticed for the court from which it is transferred.

In addition to transferring the petition for review to this Court, the Second Circuit also directed this Court to consider the petition for review as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[4] (Second Cir. Order, Feb. 18, 2003.)

### A. *Petitioner Satisfies the "In Custody" Requirement of 28 U.S.C. § 2241*

■■■ . The "in custody" requirement of 28 U.S.C. § 2241 provides that "the writ of

---

**3.** Petitioner did not file a timely motion for a stay of removal with the Second Circuit.

**4.** Because of the nature of the relief sought, a petition for a writ of habeas corpus is the proper form for petitioner's submission. In addition, in a telephonic conference with the Court on February 21, 2003 with all parties, counsel for petitioner consented to having the petition so re-characterized. *See Adams v. United States,* 155 F.3d 582, 583 (2d Cir.1998) (when petitioner had never filed a petitioner for a writ of habeas corpus, the federal district court should not have re-characterized the submission as a habeas petition unless (1) the court found that, notwithstanding its designation, the motion should be considered as made pursuant to a habeas provision because of the nature of the relief sought and (2) the district court offered the movant the opportunity to withdraw the motion rather than have it so re-characterized; expressing concern that a court's unilateral conversion of a submission into a habeas petition "initially justified because it harmlessly assisted the [movant] in dealing with legal technicalities, may result in a disastrous deprivation of a future opportunity to have a well-justified grievance adjudicated.").

habeas corpus shall not extend to a prisoner unless ... he is in custody under or by color of the authority of the United States or is committed for trial before some court thereof." 28 U.S.C. § 2241(c)(2). However, the habeas statutes require only that the petitioner be "in custody" at the time the petition is filed. *See Spencer v. Kemna,* 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (section 2254 petition); *Carafas v. LaVallee,* 391 U.S. 234, 238, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); *Scanio v. United States,* 37 F.3d 858, 860 (2d Cir.1994) (section 2255 petition); *Louise v. Costello,* No. 01 Civ. 3987, 2002 WL 1446618 (S.D.N.Y. July 2, 2002) (section 2241 petition); *Sango v. Reno,* No. 00 Civ. 7983, 2001 WL 1223427 (S.D.N.Y. Oct.15, 2001) (section 2241 petition) *see also Smith v. Ashcroft,* 295 F.3d 425, 428 (4th Cir. 2002) (petitioner "needed only to be 'in custody' at the time the petition was filed to avoid a jurisdictional challenge based on the 'in custody' requirements of [28 U.S.C. § 2241]."); *Chong v. District Director, I.N.S.,* 264 F.3d 378 (3rd Cir.2001) (alien was "in custody" for [section 2241] purposes, notwithstanding her removal from the United States, because custody is measured at time petition was filed) (*citing Carafas,* 391 U.S. at 238, 88 S.Ct. 1556).

Although the INS removed Reyes–Sanchez to the Dominican Republic on May 18, 2002, he was in INS custody at the time he filed his petition for review in the Second Circuit on May 16, 2002. Furthermore, because 28 U.S.C. § 1631 instructs that an action transferred from another court for want of jurisdiction "shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred," this Court is considering Reyes–Sanchez's petition for a writ of habeas corpus to have been filed on May 16, 2002—the date on which he filed his petition for review in the Second Circuit—when he was still in INS custody.

Therefore, petitioner was "in custody" within the meaning of 28 U.S.C. § 2241, notwithstanding his removal to the Dominican Republic after the petition was filed. The Government, in its response to the instant petition, does not dispute this finding. *See* Gov't Opp. Memo at 9.

**B. Petitioner's Removal to the Dominican Republic Does Not Render His Petition Moot**

The Government contends that the petition must nonetheless be dismissed as moot for failing to present a case or controversy pursuant to Article III, § 2 of the U.S. Constitution. Specifically, the Government maintains that petitioner's challenges to the denial of his applications for withholding of removal and deferral of removal are moot because even if the Court ruled in his favor on the merits, the decision cannot provide him with any meaningful relief since he is permanently barred from re-entering the United States because of his conviction for a controlled substance offense and since he does not challenge the validity of that conviction in his petition. (Gov't Opp. Memo at 13.)

When a habeas petitioner has been released from custody after filing a petition, the relevant inquiry is:

whether petitioner's subsequent release caused the petition to be moot because it no longer presented a case or controversy under Article III, § 2 of the Constitution. . . . This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'

*Spencer,* 523 U.S. at 7, 118 S.Ct. 978 (*quoting Lewis v. Cont'l Bank Corp.,* 494 U.S.

472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990)). A petition is not moot if the petitioner suffers from any "concrete and continuing injury" that is a collateral consequence of the detention and if the injury can be remedied if the petitioner prevails in his quest for a writ of habeas corpus. *Id; see also Gonzalez v. I.N.S.*, 2002 WL 31444952 (S.D.N.Y.2002).

In light of petitioner's acute medical condition and the fact that his removal severed him from life-sustaining AIDS treatment, the Court finds that sufficient concrete collateral consequences result from petitioner's deportation. Furthermore, petitioner's permanent bar to reentering the United States is an additional concrete collateral consequence of his deportation.

Although petitioner does not challenge the validity of his controlled substance conviction, he vigorously challenges the BIA's finding that that conviction is a "particularly serious offense" within the meaning of 8 U.S.C. § 1231(b)(3)(B), rendering him ineligible for withholding of removal pursuant to section 212(c). He also contends that he is entitled to deferral of removal pursuant to the CAT. Although it is obviously too late for this Court to withhold or defer petitioner's removal in the first instance, if the Court were to reverse the BIA's decision, the Attorney General could exercise his discretion and grant "withholding" or "deferral" of removal and allow petitioner to reenter the United States. *See also Chong v. I.N.S.*, 264 F.3d 378 (3rd Cir.2001) (removal did not moot petition of alien who sought withholding of removal pursuant to 8 U.S.C. § 1231(b)(3)(A) because 10–year reentry bar was sufficient collateral consequence). Because of petitioner's dependence on life-sustaining medications and the fact that his deportation severed him from that vital treatment, petitioner continues to suffer collateral consequences of his deportation

that can potentially be remedied by a favorable decision by this Court. *See also Leitao v. Reno*, 311 F.3d 453, 456 (1st Cir.2002) (removal did not moot petition of alien who sought hearing on his request for waiver of deportation under section 212(c)) *Chong*, 264 F.3d 378

Accordingly, this Court finds that petitioner has presented a live case or controversy and that his removal does not render his petition moot.

As a final jurisdictional matter, we note that the Second Circuit has held that "Congress has preserved the right to habeas review for both criminal and noncriminal aliens." *Liu v. I.N.S.*, 293 F.3d 36, 41 (2d Cir.2002) (*quoting Chmakov v. Blackman*, 266 F.3d 210, 215) (3rd Cir. 2001). Furthermore, the Second Circuit has determined that federal courts have jurisdiction pursuant to 28 U.S.C. § 2241 to consider claims arising under the Convention Against Torture, as implemented by the Foreign Affairs Reform and Restructuring Act and the regulations promulgated thereunder. *Wang v. Ashcroft*, 320 F.3d 130, 140–42 (2d Cir.2003).

## III. *STANDARD OF REVIEW*

 The scope of this Court's review pursuant to 28 U.S.C. § 2241 is limited. *Sol v. I.N.S.*, 274 F.3d 648, 651 (2d Cir. 2001). Federal district courts possess jurisdiction to review "purely legal statutory and constitutional claims" *Calcano Martinez v. I.N.S.*, 232 F.3d 328, 342 (2d Cr.2000), *aff'd*, 533 U.S. 348, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001), which include claims asserting the erroneous interpretation and application of relevant statutes or regulations. *Wang*, 320 F.3d at 142–43 (2d Cir.2003). However, "federal jurisdiction over § 2241 petitions does not extend to review of discretionary determinations by the IJ and the BIA." *Sol*, 274 F.3d at 651; *see also Liu v. I.N.S.*, 293 F.3d 36, 41 (2d Cir.2002) ("'review of any

discretionary decision made by the Attorney General' is 'plainly prohibit[ed]' ") (quotation omitted); *Darius v. I.N.S.*, 01 Civ. 8015, 2002 WL 31119433 at *4 (S.D.N.Y. Sept.24, 2002) ("district courts do not have jurisdiction to review discretionary determinations by an IJ or the BIA").

## IV. DISCUSSION

Petitioner raises three challenges to the BIA's decision denying his applications for withholding and deferral of removal. He asserts that: (1) the BIA improperly designated his conviction for attempted sale of cocaine as a "particularly serious crime," thereby barring him from eligibility for withholding of removal pursuant to the INA and the CAT; (2) because the CAT's implementing regulations, promulgated by the Attorney General, are inconsistent with the plain language and international understanding of the CAT, the regulations are invalid and thus the BIA applied the improper legal standards in evaluating petitioner's claims; and (3) the BIA erroneously concluded that petitioner, who suffers from AIDS, failed to prove more likely than not that he would be tortured on account of his medical condition if returned to the Dominican Republic. We will now examine each of these claims in turn.

### A. Petitioner's Conviction Was Properly Designated A "Particularly Serious Crime"

#### 1. The Attorney General Did Not Create A Categorical Definition Applicable to All Aliens Regardless of Their Individual Circumstances

■ Petitioner contends that the BIA, by relying on the U.S. Attorney General's

decision in *In re Y–L–*, improperly designated his conviction for attempted sale of cocaine a "particularly serious crime," thereby barring his eligibility for withholding of removal pursuant to the INA and the CAT.[5] Specifically, petitioner asserts that in *In re Y–L–*, the Attorney General exceeded his legal authority pursuant to 8 U.S.C. § 1231(b)(3)(B) when he created a rebuttable presumption that aggravated felonies involving unlawful trafficking in controlled substances are "particularly serious crimes."

The INA provides that an alien whose "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group or political opinion cannot be removed" unless "the Attorney General decides that" the alien has committed a "particularly serious crime." 8 U.S.C. § 1231(b)(3)(A) & (B). The INA defines a "particularly serious crime" as "an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years." 8 U.S.C. § 1231(b)(3)(B). However, the INA also provides that the Attorney General has discretion to designate certain crimes "particularly serious" regardless of the length of the sentence imposed.

It is clear from the statutory language of 8 U.S.C. § 1231(b)(3)(B) that the Attorney General's determination of whether a crime is "particularly serious" is discretionary. The statute states in relevant part as follows:

> For the purposes of clause (ii), an alien who has been convicted of an aggravated

---

**5.** A conviction for a "particularly serious crime" does not exclude an alien from eligibility for deferral of removal pursuant to the CAT. *See* 8 C.F.R. § 208.17(a). Thus, the question of whether the offense for which

Reyes–Sanchez was convicted constitutes a "particularly serious crime" is relevant only to his application for withholding of removal pursuant to the INA and the CAT.

felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime.

8 U.S.C. § 1231(b)(3)(B). *See also, Chong v. District Director, I.N.S.,* 264 F.3d 378, 387 (3rd Cir.2001) ("where a court has sentenced an alien to less than five years for an aggravated felony, the statute grants the Attorney General discretion to determine whether that alien has committed a 'particularly serious crime.' ").

The Attorney General relied on that discretion in the interim decision of *In re Y–L–,* 23 I. & N. Dec. 270, 274, 2002 WL 358818 (A.G. Mar. 5, 2002), which the BIA in turn relied upon in reviewing Reyes–Sanchez's petition. In the decision, the Attorney General concluded that "aggra-

vated felonies involving unlawful trafficking in controlled substances presumptively constitute 'particularly serious crimes' " within the meaning of the INA, 8 U.S.C. § 1231(b)(3)(B), and that "only under the most extenuating circumstances that are both extraordinary and compelling would departure from this interpretation be warranted or permissible." *In re Y–L–,* 23 I. & N. Dec. 270 at 274. The Attorney General also enumerated the factors that, "at a minimum," must be present for the BIA to find extraordinary and compelling circumstances.[6] *Id.* at 276–77.

In relying on *In re Y–L–* in its decision, the BIA examined petitioner's conviction, ultimately concluding that petitioner did not meet the "extraordinary and compelling" circumstances exception and denying his petition for withholding of removal.[7] (JA at 3–4.) In so doing, the BIA affirmed the IJ's conclusion that petitioner was convicted of a "particularly serious crime." (JA 127–29.)[8]

---

**6.** Those factors are: "(1) a very small quantity of controlled substance; (2) a very modest amount of money paid for the drugs in the offending transaction; (3) merely peripheral involvement by the alien in the criminal activity, transaction, or conspiracy; (4) the absence of any violence or threat of violence, implicit or otherwise, associated with the offense; (5) the absence of any organized crime or terrorist organization involvement, direct or indirect, in relation to the offending activity; and (6) the absence of any adverse or harmful effect of the activity or transaction on juveniles." *In re Y–L–,* 23 I. & N. Dec. at 276–77.

**7.** While there is language in the BIA's decision that the Attorney General had classified drug trafficking convictions as *"per se* 'particularly serious' " (JA 3), it is clear that the BIA properly did not view it as a *per se* matter and instead properly approached the designation of a "particularly serious crime" as a rebuttable presumption. Specifically, the BIA engaged in an individualized analysis of petitioner's conviction, contemplated whether the

"extraordinary and compelling" circumstances exception applied to him, and exercised its discretion to determine whether or not petitioner's conviction should be classified as "particularly serious."

**8.** It is worthwhile to note that the IJ issued his opinion before *In re Y–L–* was issued by the Attorney General. Thus, the IJ's determination that petitioner was convicted of a "particularly serious crime" was based on a rigorous analysis of petitioner's conviction in light of various factors, including those factors set forth in *In re Frentescu,* 18 I. & N. Dec. 244, 247, 1982 WL 190682 (BIA 1982). (JA 127–29.) The IJ found that: (1) although petitioner received a light sentence and did not employ violence in the commission of his crime, petitioner and his accomplices "were in the full-fledged business of dealing narcotics," which is "taken very seriously by Congress, as well as the [BIA]"; (2) petitioner "refused to take responsibility" for committing the crime; (3) it was "clear" that petitioner was using cocaine at the time of the commission of the crime; and (4) petitioner's

Petitioner maintains that the plain language of 8 U.S.C. § 1231(b)(3)(B) indicates that the inquiry into whether an alien was convicted of a "particularly serious crime" must be conducted on an individualized, case-by-case basis, and that therefore, the Attorney General's attempt to create a category of crimes pre-designated "particularly serious" is impermissible.

8 U.S.C. § 1231(b)(3)(B) provides that the Attorney General may determine that "an alien has been convicted of a particularly serious crime," irrespective of the length of the sentence imposed. Petitioner maintains that the use of the phrase "an alien" demonstrates Congress' intent that the Attorney General determine eligibility for withholding of removal on an individual case-by-case basis and that the statute bars him from creating broad categories of "particularly serious" crimes.

 The Court must give substantial deference to executive agencies in their interpretations of statutory law. See *Ahmetovic v. I.N.S.*, 62 F.3d 48, 51 (2d Cir. 1995); *Osorio v. I.N.S.*, 18 F.3d 1017, 1022 (2d Cir.1994). In reviewing the Attorney General's regulation,

> [i]f the intent of Congress is clear, that is the end of the matter for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue ... the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (footnotes omitted).

The Attorney General's pronouncement in *In re Y–L–* takes away a significant amount of discretion from the IJ and the BIA with respect to drug trafficking offenses by creating a rebuttable presumption, with only limited exceptions, that those offenses are "particularly serious crimes." However, Congress did not directly address the precise question at issue here: namely, whether and under what conditions it might be appropriate for the Attorney General to exercise his discretion pursuant to 8 U.S.C. § 1231(b)(3)(B) to designate certain categories of offenses as "particularly serious crimes" either *per se* or as a matter of rebuttable presumption. The plain language of the statute does not require the Attorney General to make determinations about "particularly serious crimes" on a case-by-case basis. The statute is silent on this point and gives the Attorney General no specific instructions for making this determination. *See Steinhouse v. Ashcroft*, 247 F.Supp.2d 201, 206–07 (D.Conn.2003). Furthermore, the legislative history, which petitioner urges upon the Court, is insufficiently clear to conclude that the Attorney General is absolutely precluded from designating certain categories of crimes "particularly serious" as a matter of rebuttable presumption that leaves room for some individualized analysis of a given alien's conviction.

Thus, the question for this Court is whether the Attorney General's decision is based on a permissible construction of the statute. *Chevron*, 467 U.S. at 842–43, 104 S.Ct. 2778. Section 1231(b)(3)(B) confers discretion on the Attorney General to determine circumstances in which an alien has been convicted of a particularly serious crime. Congress "left a gap for the agency to fill" and there was "an express delegation of authority to the agency to elucidate a specific provision of the statute" through the agency's own discretionary determinations. *Id.* at 843–44, 104 S.Ct.

"testimony regarding the circumstances of the crime was not credible." JA 128–29.

2778. As the Attorney General correctly notes, "there is long-standing congressional recognition that drug trafficking felonies justify the harshest of legal consequences." *In re Y–L–,* 23 I & N. Dec. at 275 (*citing* 8 U.S.C. § 1227(a)(2)(B) (deportation for controlled-substance violations); 8 U.S.C. § 1252(a)(2)(C) (no judicial review where alien's removal is predicated on a drug trafficking felony); 8 U.S.C. § 1228 (expedited removal for aggravated felonies, including drug trafficking felonies); 18 U.S.C. § 3592(c)(12) (conviction for serious federal drug offenses constitutes aggravating factor for purposes of weighing imposition of federal death penalty); 21 U.S.C. § 862 (convicted drug traffickers subject to order of ineligibility for federal benefits)). Similarly, the BIA has routinely determined that narcotics crimes are "particularly serious" for immigration purposes. *See, e.g., Matter of U–M–,* 20 I. & N. Dec. 327, 1991 WL 353519 (BIA 1991); *Matter of Gonzalez,* 19 I. & N. Dec. 682, 1988 WL 235432 (BIA 1988).

Applying the *Chevron* standard, the Attorney General's regulation creating a rebuttable presumption that drug-trafficking felonies constitute "particularly serious crimes" neither unlawfully exceeds the scope nor constitutes an impermissible interpretation of 8 U.S.C. § 1231(b)(3)(B).

Accordingly, petitioner's claim that his conviction was impermissibly designated a "particularly serious crime" must be denied.

### 2. *The BIA's Determinations That Petitioner Was Convicted of a Particularly Serious Crime and That Petitioner Did Not Satisfy the "Extraordinary and Compelling" Circumstances Exception Are Beyond the Scope of This Court's Review*

■ Petitioner contends that even if the Attorney General's categorical desig-

nation is proper, the BIA erred in concluding that petitioner failed to demonstrate "extraordinary and compelling" circumstances warranting a deviation from the presumption that he had been convicted of a "particularly serious crime." As discussed in Part III of this Opinion, *supra,* the Second Circuit has held that "federal jurisdiction over § 2241 petitions does not extend to review of discretionary determinations by the IJ and the BIA." *Sol,* 274 F.3d at 651. The BIA's determination that Reyes–Sanchez did not establish "extraordinary and compelling circumstances" warranting a deviation from the presumption that he was convicted of a "particularly serious crime" is a factual, discretionary determination by the BIA. That determination is therefore not within this Court's scope of review.

### 3. *Petitioner's Claim that the Attorney General Violated the Refugee Convention Is Without Merit*

■ Reyes–Sanchez also contends that Article 33 of the 1951 United Nations Convention Relating to the Status of Refugees, adopted July 28, 1951, art. 26, 19 U.S.T. 6259, 6576, 189 U.N.T.S. 150, 172 (entered into force Apr. 22, 1954) (the "Refugee Convention"), prohibits the Attorney General from determining that certain categories of crimes are "particularly serious." (Pet. Brief at 55–58.) This claim is without merit.

Article 33 of the Refugee Convention is not self-executing; it can only be given force by the enactment of domestic legislation. *See, e.g., Cuban Am. Bar Ass'n, Inc. v. Christopher,* 43 F.3d 1412, 1426 n. 13 (11th Cir.1995), *cert. denied, sub nom., Haitian Refugee Center, Inc. v. Christopher,* 515 U.S. 1142, 115 S.Ct. 2578, 132 L.Ed.2d 828 (1995). Because the Refugee

Convention is not self-executing, it does not create individual rights giving rise to habeas relief. *See Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir.2003) ("unless a treaty is self-executing ... it does not, in and of itself, create individual rights that can give rise to habeas relief."); *Columbia Marine Services, Inc. v. Reffet, Ltd.*, 861 F.2d 18, 21 (2d Cir.1988) ("An action arises under a treaty only when the treaty expressly or by implication provides for a private right of action. The treaty must be self-executing; i.e. it must prescribe rules by which private rights may be determined.") (internal quotation marks, alteration, and citation omitted). Therefore, Reyes–Sanchez cannot challenge the Attorney General's interpretation of a "particularly serious crime" on the grounds that it violates the Refugee Convention.

In any event, the Refugee Convention is silent as to the definition of a "particularly serious crime." Thus, Congress, through domestic legislation, has designated certain classifications of crimes as "particularly serious" and has granted the Attorney General the discretion to identify other such offenses. *See* 8 U.S.C. § 1231(b)(3)(B). Thus, there is no basis for finding that the Attorney General's definition of a "particularly serious crime" violates the Refugee Convention.

**B. *Petitioner's Challenges to The CAT's Implementing Regulations Are Without Merit***

■ Petitioner contends that the BIA applied improper legal standards in denying his application for relief pursuant to the CAT. Specifically, Reyes–Sanchez challenges the validity of the CAT's implementing regulations as contrary to the plain language, purpose, and international understanding of Article 3 of the CAT. (Pet. Brief at 28–50.) Petitioner contends that the implementing regulations impose on an alien applicant a higher burden of proof than does the plain language of the Convention.

For instance, petitioner alleges that the regulatory requirement that petitioner prove "more likely than not" that he will be tortured, 8 C.F.R. § 208.16(c)(2), is unlawfully more stringent than the plain language of the CAT, which states that "[n]o State Party shall expel, return ... or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." In addition, petitioner challenges the following regulations on essentially the same basis: (1) 8 C.F.R. § 208.18(a)(5) ("to constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering"); (2) 8 C.F.R. 208.18(a)(2) ("torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture").

In considering petitioner's claims, it is necessary to first outline the relationship between the CAT and its implementing regulations and analyze the validity of those regulations.

**1. *The United States' Ratification of the CAT***

The United Nations Convention Against Torture has been in effect in the United States since November 20, 1994. The U.S. Constitution invests treaty-making power in the President of the United States by and with the advice and consent of two-thirds of the Senate. *See* U.S. Const. art. II, § 2. The CAT was transmitted to the Senate in 1988 for its advice and consent. *See* Message From the President Transmitting the CAT, Treaty Doc. No. 100–20, at iii (1988). In turn, the Senate gave its advice and consent in its resolution of ratification, including the following specific understandings:

That with reference to Article 1, the United States understands that, in order to constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering and that mental pain or suffering refers to prolonged mental harm caused by or resulting from: (1) the intentional infliction or threatened infliction of severe physical pain or suffering; (2) the administration or application, or threatened administration or application, of mind altering substances or other procedures calculated to disrupt profoundly the senses or the personality; (3) the threat of imminent death; or (4) the threat that another person will imminently be subject to death, severe physical pain or suffering, or the administration or application of mind altering substances or other procedures calculated to disrupt profoundly the senses or personality....

That the United States understands the phrase, "where there are substantial grounds for believing that he would be in danger of being subjected to torture," as used in Article 3 of the Convention, to mean "if it is more likely than not that he would be tortured."

136 Cong. Rec. S17486, S17491 to S17493 (Oct. 27, 1990). In addition, the Senate's advice and consent was expressly subject to the declaration "[t]hat the provisions of Articles 1 through 16 are not self-executing." *Id.* at S17491 to S17492, Section III(1).

The President signed the treaty and the ratification instrument was deposited with the United Nations in 1994. *See* 64 Fed. Reg. 8478, 8478 (Feb. 19, 1999).

### 2. *FARRA and the CAT's Implementing Regulations*

 The CAT is not a self-executing treaty. *See* 136 Cong. Rec. S17486–01 (da-

ily ed. Oct. 27, 1990) (statement of Sen. Terry Sanford), 1990 WL 168442 (Oct. 27, 1990) (rendering the advice and consent of the Senate in ratifying the CAT subject to the declaration that "the provisions of Articles 1 through 16 of the Convention are not self-executing"); *see also* S. Treaty Doc. No. 100–20 (1988), at 2 (letter of transmittal from the President of the United States, recommending that the Senate adopt the accompanying CAT along with "a declaration that the Convention is not self-executing"); *Wang,* 320 F.3d at 140.

As with the Refugee Convention, discussed *supra,* the CAT is not a self-executing treaty and can only be given force through the enactment of domestic legislation. Thus, in order to implement the CAT, Congress passed the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub.L. No. 105–277, div. G, Title XXII, § 2242, 112 Stat. 2681–822 (Oct. 21, 1998) (codified as note to 8 U.S.C. § 1231), which in turn directed the heads of the appropriate executive agencies to promulgate "regulations to implement the obligations of the United States under Article 3 of the [CAT] subject to any reservations, understandings, declarations, and provisos contained in the ... Senate resolution of ratification." FARRA § 2242(b). In accordance with FARRA's mandate, and after the requisite rule-making proceedings, the Attorney General promulgated the CAT regulations (*hereinafter* the "implementing regulations"). *See* 64 Fed. Reg. at 8489–91 (codified at 8 C.F.R. § 208.16(c), 208.18(a)).

### 3. *The CAT's Implementing Regulations Are Consistent with the Senate's Resolution of Ratification and Should Be Given Great Deference*

Each of the implementing regulations challenged by petitioner is consistent with

the Senate's resolution of ratification of the CAT.

First, with regard to 8 C.F.R. § 208.18(a)(5), the Senate's resolution of ratification provided that the CAT should only be ratified with the understanding that "in order to constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering and that mental pain or suffering refers to prolonged mental harm caused by or resulting from: (1) the intentional infliction or threatened infliction of severe physical pain or suffering." 36 Cong. Rec. S17491 to S17492, Section II(1)(a). The implementing regulation, 8 C.F.R. § 208.18(a)(5), is plainly consistent with the Senate's understanding of the CAT in that it prescribes that in order "to constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering."

Second, the Senate's resolution of ratification states that the CAT may only be ratified if "torture" is understood to mean death or what the resolution describes as severe physical or mental pain or suffering. *Id.* at S17491 to S17492, Section II(1)(a). The implementing regulations appropriately reflect the Senate's understanding by providing that "torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. 208.18(a)(2).

Finally, the Senate's resolution of ratification was expressly subject to the understanding that the standard of proof for CAT claims is that "it is more likely than not" that an applicant would be tortured. 136 Cong. Rec. at S17491 to S17492, Section II(2). The implementing regulations are faithful to FARRA's mandate—that "regulations to implement the obligations of the United States under Article 3 of the [CAT][are] subject to any reservations, understandings, declarations, and provisos contained in the ... Senate resolution of ratification"—by requiring immigration judges and the BIA to apply the "more likely than not" standard of proof. *See* 8 C.F.R. § 208.16(c)(2) (CAT relief only available if "it is more likely than not that [applicant] would be tortured."). For these reasons, the Second Circuit and all other courts reviewing CAT claims have applied the "more likely than not" standard. *See, e.g., Wang,* 320 F.3d at 143–44; *Efe v. Ashcroft,* 293 F.3d 899, 907 (5th Cir.2002); *Sevoian v. Ashcroft,* 290 F.3d 166, 174–75 (3rd Cir.2002); *Ali v. Reno,* 237 F.3d 591, 596 (6th Cir.2001).

Accordingly, the Attorney General's regulations fully comport with the executive and legislative intentions underlying the adoption of the CAT by the United States. Petitioner contends, however, that these regulations conflict with the plain language and international understanding of the CAT itself. Those arguments, however, are without merit because, as discussed *supra,* unless a treaty is self-executing, it does not, by itself, create individual rights that can give rise to habeas relief. *Wang,* 320 F.3d at 140; *Columbia Marine Services, Inc.,* 861 F.2d at 21. Thus, petitioner has individual rights pursuant to the CAT only by virtue of the United States' ratification of the treaty, the passage of FARRA and the regulations promulgated thereunder. The Convention itself—like most treaties—is not a manifesto of rights giving rise to individual relief but a contract between nations. *See, e.g., Zicherman v. Korean Air Lines Co., Ltd.,* 516 U.S. 217, 226, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996) (observing with regard to treaty interpretation that a treaty is "an agreement among sovereign powers"); *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court,* 482 U.S. 522, 533, 107

S.Ct. 2542, 96 L.Ed.2d 461 (1987) ("In interpreting an international treaty, we are mindful that it is 'in the nature of a contract between nations ....'") (*quoting Trans World Airlines, Inc. v. Franklin Mint Corp.*, 466 U.S. 243, 253, 104 S.Ct. 1776, 80 L.Ed.2d 273 (1984)). The fact that the plain language or other nations' interpretations of the CAT may differ from the United States' application of the Convention does not, by itself, render the Attorney General's regulations invalid.

The Supreme Court has instructed that, in interpreting treaties, courts should give "great weight" or "considerable deference" to the meaning attributed to the treaty provisions by the Executive Branch. *O'Connor v. United States*, 479 U.S. 27, 33, 107 S.Ct. 347, 93 L.Ed.2d 206 (1986) (executive application of a treaty is entitled to "great weight"); *Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 184–185, 102 S.Ct. 2374, 72 L.Ed.2d 765 (1982) ("The meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight."); *see also Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 151 n. 15, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989) (Brennan, J. concurring) (the Court "owes considerable deference to the views of the Executive Branch concerning the meaning of an international treaty"); 15 MOORE'S FEDERAL PRACTICE § 101.117[3][d] (3d ed. 2002) ("In interpreting treaties, the courts usually respect the position of the executive branch on the question under consideration.").

For the reasons set forth above—namely, because (1) Article 3 of the CAT is not self-executing and petitioner's individual rights giving rise to habeas relief only arise by virtue of FARRA and the implementing regulations promulgated thereunder, and (2) the Attorney General's regulations comport with the executive and legislative intentions underlying the United States' adoption of the CAT—the Court grants "considerable deference" and "great weight" to those implementing regulations and finds that petitioner's challenges to the implementing regulations of the CAT are without merit. It follows logically from that conclusion that the BIA was not in error in applying those regulations to petitioner's CAT claims.

**4. *The BIA's Discretionary Determination That Petitioner Did Not Demonstrate That It Is More Likely Than Not That He Will Be Tortured If Returned to the Dominican Republic Is A Discretionary Determination Beyond the Scope of This Court's Habeas Review***

As discussed in Part III of this Opinion, the Second Circuit has held that "federal jurisdiction over § 2241 petitions does not extend to review of discretionary determinations by the IJ and the BIA." *Sol*, 274 F.3d at 651.

 This Court has already concluded that the BIA applied the proper legal standards in evaluating petitioner's CAT claims. The BIA's factual determination that Reyes–Sanchez failed to demonstrate that it is more likely than not that he will be tortured if returned to the Dominican Republic is a discretionary decision, and is therefore not reviewable by this Court.

## V. CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied.