**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1178
_____

ROSANNA MIGUELINA SANTOS INFANTE,
a/k/a Miguelina Santes Infante;
a/k/a Infante Miguelia,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A037-157-566)
Immigration Judge:  Honorable Andrew R. Arthur
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 23, 2014
Before: AMBRO, SHWARTZ and SLOVITER, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 23, 2014)
_____

OPINION
_____

PER CURIAM

In 1981, Rosanna Santos-Infante, a native and citizen of the Dominican Republic,

was admitted to the United States as a lawful permanent resident when she was a child.

In 2013, the Government served her with a notice to appear, charging her as removable

on the following grounds:  (1) under Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii) for having been convicted of an aggravated felony relating to illicit trafficking of a controlled substance; (2) under INA § 237(a)(2)(B)(i) for having been convicted of a controlled substance violation; (3) under INA § 237(a)(2)(A)(ii) for having been convicted of crimes involving moral turpitude; and (4) under INA § 237(a)(2)(A)(iii) for having been convicted of an aggravated felony relating to forgery. On the notice to appear, the Government listed a 1991 conviction under Chapter 318-B:2 of the New Hampshire Revised Statutes Annotated for the sale of cocaine, a 2006 retail theft conviction in Pennsylvania under 18 Pa. Cons. Stat. § 3929(a)(1), 2011 Pennsylvania convictions for possession of oxycodone and hydrocodone under 35 Pa. Cons. Stat. § 780-113(a)(16), and forgery convictions in Pennsylvania in 2011 under 18 Pa. Cons. Stat. § 4101(a)(2).  The Government further alleged that the crimes did not arise out of a single scheme of misconduct.

After Santos-Infante admitted the allegations relating to the convictions, R. 178-84, the Immigration Judge ("IJ") found her removable as charged, R. 184.  She then applied for asylum, withholding, and protection under the Convention Against Torture ("CAT").  She claimed that she feared that Aris Tejada, who is the father of one of her children and who was previously removed to the Dominican Republic, would harm her on her return to her native country.  She detailed a long history of abuse by him in their lengthy on-again, off-again relationship and described his threat to "cut her into pieces" if he could not be with her.

2

The IJ concluded that Santos-Infante was ineligible for asylum for having been convicted of aggravated felonies. The IJ further ruled that she was not eligible for withholding because she had been convicted of a particularly serious crime based on the aggregate length of her sentences and based on her conviction for a controlled substance violation. In coming to the latter conclusion, the IJ examined the New Hampshire conviction under the six factors set forth in In re Y-L-, A-G-, and R-S-R-, 23 I. & N. Dec. 270, 276-77 (Att'y Gen. 2002). Treating Santos-Infante's testimony as credible for purposes of analysis of the CAT claim, the IJ denied the claim. Santos-Infante filed an appeal with the Board of Immigration Appeals ("BIA") and, while her appeal was pending, filed a motion to remand.

The BIA dismissed Santos-Infante's appeal and denied her motion to remand. The BIA also concluded the 1991 New Hampshire conviction was an aggravated felony and a particularly serious crime. Considering the same six factors the IJ used to determine if there were extenuating circumstances to overcome the presumption that the crime was particularly serious, the BIA stated that the "third through sixth factors" were not met. The BIA further noted that, "based on the indictment," Santos-Infante "apparently was directly involved in the drug transaction, and 'force and arms' were used, so that the third and fourth criteria were not satisfied." Consequently, the BIA ruled, she was only potentially eligible for CAT relief. The BIA denied the CAT claim, ruling that Santos-Infante had not shown that it was more likely than not that she would be tortured at the

3

instigation of, or with the acquiescence of, a public official in the Dominican Republic. The BIA denied the motion to remand on the basis that the additional documentation she wished to present was not sufficiently material so as to warrant a remand.

Santos-Infante, through counsel who represented her in the agency, presents a petition for review. She challenges the determination that she was not eligible for withholding on the basis that "she did not meet two of the 6 requirements of In re Y-L-, A-G-, and R-S-R-." In relation to those factors, she asserts that her role in the drug crime was peripheral because an abusive boyfriend forced her into it. She also argued the use of the standard of In re Y-L-, A-G-, and R-S-R- was impermissibly retroactive as applied to her and that the standard of In re Frentescu, 18 I. & N. Dec. 244 (BIA 1982), should have been applied instead. In addition, Santos-Infante stated that the BIA erred in ignoring an erroneous calculation relating to her aggregate sentence (she claimed the IJ should not have counted two concurrent 23-month sentences twice). Santos-Infante also cited the ruling on her CAT claim, contending that the BIA overlooked evidence of the pervasive nature of domestic violence in the Dominican Republic. She asserted that the BIA violated her right to due process by ignoring evidence in the record.

The Government argues that the petition for review should be dismissed as to removability, asylum, and CAT deferral because Santos-Infante is removable as an aggravated felon, and denied as to withholding because she is ineligible for that form of relief for having been convicted of a particularly serious crime. The Government further contends that, if we have jurisdiction over the denial of CAT relief, Santos-Infante did

4

not show that she was more likely than not to face torture on her return to the Dominican Republic.

Because the basis for Santos-Infante's removal is her conviction for an aggravated felony, our jurisdiction is limited by the REAL ID Act; however, we retain jurisdiction over constitutional claims and questions of law.[1] See Pierre v. Att'y Gen. of the U.S., 528 F.3d 180, 184 (3d Cir. 2008) (en banc) (citing 8 U.S.C. § 1252(a)(2)(C)-(D)); see also Silva-Rengifo v. Att'y Gen. of the U.S., 473 F.3d 58, 63 (3d Cir. 2007) (citing Kamara v. Att'y Gen. of the U.S., 420 F.3d 202, 210-11 (3d Cir. 2005), for the proposition that the "jurisdictional grant regarding appeals by aggravated felons extends not just to legal determinations but also to application of law to facts").

Santos-Infante's first main argument is that her New Hampshire conviction was not a "particularly serious" crime that disqualified her from withholding.[2] Whether she was convicted of a "particularly serious crime" is a question of law that is reviewed de novo, albeit with deference to the agency where appropriate. See Lavira v. Att'y Gen. of

---

[1] We note that she does not challenge the ruling that she is removable on the bases of aggravated felony convictions and convictions for crimes of moral turpitude. Accordingly, we consider those issues waived. See Lie v. Ashcroft, 396 F.3d 530, 532 n.1 (3d Cir. 2005).

[2] It does not appear that she challenges whether her conviction was a "particularly serious" crime under the asylum provisions. An alien convicted of an aggravated felony is considered to have been convicted of a particularly serious crime for purposes of the asylum statute. 8 U.S.C. § 1158(b)(2)(B)(i). Such an alien is ineligible for asylum. 8 U.S.C. § 1158(b)(2)(A)(ii); Ilchuk v. Att'y Gen. of the U.S., 434 F.3d 618, 621 (3d Cir. 2006).

the U.S., 478 F.3d 158, 164 (3d Cir. 2007), overruled on other grounds by Pierre, 528 F.3d at 189.

For withholding purposes, an aggravated felony counts as a particularly serious crime if it results in "an aggregate term of imprisonment of at least 5 years" or if the Attorney General determines that it is particularly serious, "notwithstanding the length of sentence imposed." 8 U.S.C. § 1231(b)(3)(B). The BIA has determined that aggravated felonies involving unlawful trafficking in controlled substances presumptively constitute "particularly serious crimes." Miguel–Miguel v. Gonzales, 500 F.3d 941, 947-49 (9th Cir. 2007) (citing In re Y-L-, A-G-, & R-S-R-); see also Chong v. Dist. Dir., 264 F.3d 378, 387-88 (3d Cir. 2001) (discussing how the BIA determines whether an aggravated felony with a prison term of less than five years constitutes a "particularly serious" crime). The presumption can be rebutted "[o]nly under the most extenuating circumstances that are both extraordinary and compelling." In re Y-L-, A-G-, & R-S-R-, 23 I. & N. Dec. at 274. At a "*minimum*," the alien must show the following:

> (1) a very small quantity of controlled substance;
> (2) a very modest amount of money paid for the drugs in the offending transaction;
> (3) merely peripheral involvement by the alien in the criminal activity, transaction, or conspiracy;
> (4) the absence of any violence or threat of violence, implicit or otherwise, associated with the offense;
> (5) the absence of any organized crime or terrorist organization involvement, direct or indirect, in relation to the offending activity; and
> (6) the absence of any adverse or harmful effect of the activity or transaction on juveniles.

6

Id. at 276-77. "Only if *all* of these criteria were demonstrated" would it be appropriate to consider if some other more unusual circumstance might justify a departure from the presumption. Id. at 277.

The BIA considered the grand jury indictment for Santos-Infante's New Hampshire offense. The indictment stated that Santos-Infante, "with force and arms" and without authorization, purposely sold or dispensed 1.62 grams of cocaine to a police detective for $100. R. 914. She pleaded guilty to the charge. R. 915. The BIA assumed that Santos-Infante could show, through the indictment, that the amounts of cocaine and money exchanged could be considered small and modest, respectively, but concluded that factors three through six could not be met. The BIA noted that the indictment itself precluded a ruling that the third and fourth factors were met (because the indictment described Santos-Infante's direct involvement in the transaction and the use of "force and arms").

Santos-Infante focuses her argument on the third and fourth factors, claiming that she was under a threat of violence from Tejada so her participation was peripheral and that she did not use violence in the offense. In her testimony before the IJ, her description of the events was somewhat different. Tejada's influence through the abusive relationship was described with a higher degree of generality. In explaining the events that led to her arrest, she said she was convicted for assisting him in a drug sale because "he was always taking [her] along or [she] was always with him, and when he did that, then [she] was there."

7

R. 262. She said that she thought the police detective was a friend of Tejada's and that she had told him that she needed help and had no part in what Tejada was doing. R. 262-63. She also asserted that she did not take money for the drugs, but she conceded that she pleaded guilty to the offense. R. 263. In addition, she described a separate conviction arising from events on the same day as the drug sale. Namely, she was convicted of conspiracy with Tejada to deliver half an ounce or an ounce and a half of cocaine to the same detective. R. 288-90. (It does not appear that the record for this conviction is in the administrative record.)

While it is troubling that Santos-Infante was in an abusive relationship, the evidence relating to her relationship with her ex-boyfriend was not strong enough to overcome the presumption that her controlled substance violation is a particularly serious crime especially where she pleaded guilty to being the actor who committed the crime. The amount of cocaine may be small and the amount of money may be modest. Her testimony was that there was no violence (in contradiction to the indictment). But there is no question that she committed this individual controlled substance violation. She testified that Tejada was also arrested that day and they were both convicted of conspiracy. But those records are not in the record to provide context to the crime for which she is removable. Even if they were, given her guilty plea to a violation of the New Hampshire statute for selling or dispensing a controlled substance, it is difficult to see how her involvement in that crime was only peripheral. In short, Santos-Infante did not make the showing necessary to overcome the presumption. Also, she ignores the

8

BIA's ruling that she did not provide evidence relating to the fifth and sixth factors.

Furthermore, we reject Santos-Infante's claim that the application of the In re Y-L-, A-G-, & R-S-R- factors was impermissibly retroactive as to her in regard to the drug offense she committed in 1991, before that decision of the Attorney General was issued. She asserts that the BIA should have instead used the test of In re Frentescu. In In re Frentescu, the BIA did not "set forth an exact definition of 'a particularly serious crime,'" but provided some guidance, 18 I. & N. Dec. at 247, that Santos-Infante believes would have lead to a more favorable result in her case. The decision in In re Y-L-, A-G-, & R-S-R- did limit the discretion allowed by the analysis in In re Frentescu insomuch as it created a rebuttable presumption in regard to drug trafficking offenses. However, because In re Y-L-, A-G-, & R-S-R- "is not a statute or regulation, the problem of retroactivity is not present here." Perez v. Loy, 356 F. Supp. 2d 172, 177 (D. Conn. 2005). The Attorney General has discretion to determine whether a crime is particularly serious. See Denis v. Att'y Gen. of the U.S., 633 F.3d 201, 214 (3d Cir. 2011); Reyes-Sanchez v. Ashcroft, 261 F. Supp. 2d 276, 286 (S.D.N.Y. 2003) (considering the Attorney General's discretion and the adoption of the In re Y-L-, A-G-, & R-S-R- test). The standard that the Attorney General uses in exercising discretion can evolve (within reason). See Denis, 633 F.3d at 215 n.19 (not discussing any retroactivity problem in noting that the proper focus for the IJ, BIA, and this Court was the factors of the then-current test, not In re Frentescu, to evaluate the nature of a crime committed in 1998); Kaplun v. Att'y Gen. of the U.S., 602 F.3d 260, 267-68 (3d Cir. 2010) (rejecting an

argument that In re Frentescu should apply to a crime committed in 1998 where the statutory definition of a particularly serious crime has since changed);[3] Miguel–Miguel, 500 F.3d at 947 (explaining that the Attorney General may overrule the BIA by issuing a published opinion).

Because the BIA could base its ruling on an analysis of the six factors of In re Y-L-, A-G-, & R-S-R-, it did not have to consider the argument relating to the IJ's alternative ruling based on the calculation of her aggregate sentence. Also, although the BIA rejected Santos-Infante's arguments, it considered them and the evidence in the record. No due process violation is apparent. See Sevoian v. Ashcroft, 290 F.3d 166, 178 (3d Cir. 2002) (noting that the BIA "'is not required to write an exegesis on every contention'") (citation omitted).

Furthermore, a petitioner must show that the torturous acts would be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). It is not that the BIA used the wrong standard or did not adjudicate her claim, as she asserts at one point; the

---

[3] We note that the language of the statute at the time of Santos-Infante's crime was more restrictive than the language on which In re Frentescu was based. See Afridi v. Gonzales, 442 F.3d 1212, 1220 n.4 (9th Cir. 2006) (noting, inter alia, the 1990 amendment of the Immigration and Nationality Act that provided that all aggravated felonies constituted particularly serious crimes, and which superseded In re Frentescu for a time), overruled on other grounds by Estrada-Espinoza v. Mukasey, 546 F.3d 1147, 1160 n.15 (9th Cir. 2008); see also In re U-M-, 20 I. & N. Dec. 327, 330-31 & n.2 (BIA 1991). The law has since changed, and the standards applied with it have also changed. See Ziffrin, Inc. v. United States, 318 U.S. 73, 78 (1943) (explaining that if a law is amended before an administrative agency rules, the agency must apply the new law).

BIA simply concluded, based on a review of the record, that Santos-Infante did not make the required showing.

For these reasons, we will deny the petition for review.